UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

| | |
|---|---|
| SCOTTY NEIL MESSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 13-cv-75-JMH |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

**\*\*\*   \*\*\*   \*\*\***

Plaintiff, Scotty Neil Messer, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claims for period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.   OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)  If the claimant is currently engaged in substantial
     gainful activity, he is not disabled.

(2)  If the claimant is not doing substantial gainful
     activity, his impairment must be severe before he
     can be found disabled.

(3)  If the claimant is not doing substantial gainful
     activity and is suffering from a severe impairment
     that has lasted or is expected to last for a
     continuous period of at least twelve months, and
     his impairment meets or equals a listed impairment,
     the claimant is presumed disabled without further
     inquiry.

(4)  If the claimant's impairment does not prevent him
     from doing past relevant work, he is not disabled.

(5)  Even if the claimant's impairment does prevent him
     from doing his past relevant work, if other work
     exists in the national economy that accommodates
     his residual functional capacity and vocational
     factors (age, education, skills, etc.), he is not
     disabled.

*Id.*  The burden of proof is on the claimant throughout the first
four steps of this process to prove that he is disabled.  *Bowen v.
Yuckert*, 482 U.S. 137, 146, n. 5 (1987).  If the administrative law
judge reaches the fifth step without a finding that the claimant is
not disabled, then the burden shifts to the Commissioner to
consider the claimant's residual functional capacity, age,
education, and past work experience to determine if he could
perform other work.  If not, he would be deemed disabled. 20 C.F.R.
§ 404.1520(f).  Importantly, the Commissioner only has the burden
of proof on "the fifth step, proving that there is work available
in the economy that the claimant can perform." *Her v. Commissioner
of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Plaintiff filed his applications for benefits on August 16, 2010, alleging disability as of July 7, 2010 [TR 146-153, 175]. Plaintiff's applications were denied initially and again on reconsideration [TR 88-91, 93-98]. After a hearing before an Administrative Law Judge ("ALJ") on February 8, 2012 [TR 25-43], the ALJ issued an unfavorable decision on February 27, 2012 [TR 10-20]. Plaintiff's request for review to the Appeals Council was denied on May 7, 2013, and the decision of the ALJ now stands as the final decision of the Commissioner [TR 1-5].

At the time the ALJ rendered his decision, Plaintiff was 45 years old [TR 146]. He has a high school education and has past relevant work experience as a fast food worker, truck driver and laborer [TR 30, 180, 191, 193]. Plaintiff claims that his ability to work is limited due "bad" discs in his back and a pinched nerve in his left leg [TR 179]. Plaintiff alleges that he became disabled on July 7, 2010 and that he could no longer work due to his condition [TR 179].

The ALJ began his analysis by determining that Plaintiff has met the insured status requirements of the Social Security Act through September 30, 2014 [TR 15]. At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since July 7, 2010, the alleged onset date [TR 15]. At step two, the ALJ determined that Plaintiff suffers from the following severe

impairments: degenerative disc disease (DDD) of the lumbar spine, status-post spinal fusion and laminectomy [TR 15]. Continuing on to the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments [TR 16].

Reviewing the entire administrative record, the ALJ described Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can push/pull to the weight limits of light work. He requires a sit/stand option at 30-minute intervals. He can frequently operate foot controls with both lower extremities. The claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps/stairs, kneel, stoop, crouch, and crawl. He must avoid concentrated exposure to extreme cold; extreme heat; excessive vibration; and hazards such as moving machinery and unprotected heights.

[TR 16-19].

At step four of the analysis, considering the testimony of a Vocational Expert ("VE"), the ALJ found that Plaintiff could not perform any past relevant work [TR 19]. However, at step five, the ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [TR 19-20]. Therefore, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 7, 2010 through the date of the ALJ's

decision. [TR 20].

The ALJ's decision that Plaintiff is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied his request for review on May 7, 2013 [TR 1-5]. Plaintiff has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is

supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## IV.  ANALYSIS

On appeal, Plaintiff argues that the ALJ's determination was not based on substantial evidence or decided by the proper legal standards.  Plaintiff's brief presents four issues to be determined by this Court: (1) whether the ALJ gave appropriate weight to the opinions of an examining physician; (2) whether the ALJ's decision is based upon substantial medical evidence in light of the ALJ's allegedly mistaken reference to a report that Plaintiff was climbing a telephone pole in January 2012, an activity that the ALJ found to be inconsistent with Plaintiff's alleged disability; (3) whether the ALJ's finding that Plaintiff did not meet or equal Listing 1.04C (Disorders of the Spine) is based upon substantial evidence; and (4) whether the ALJ's decision was based upon all of the substantial evidence.  However, despite the issues raised by Plaintiff, a review of the administrative record reveals that the ALJ's decision was based on substantial evidence and was decided by the proper legal standards.

A.  The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff first argues that the ALJ improperly relied on a

6

non-examining physician, Carlos X. Hernandez, M.D., over an opinion provided by a one-time examiner, Sujata R. Gutti, M.D. Dr. Gutti examined Plaintiff in January 2012. Dr. Gutti noted that the muscle tone in Plaintiff's upper and lower extremities was normal, although Plaintiff has a significant limp, especially when he gets up [TR 449-450]. After examining Plaintiff, Dr. Gutti found lumbago, left L5 radiculopathy, lumbar facet dysfunction, lumbar spondylosis at multiple level with aggravation and failed back syndrome with two spinal surgeries [TR 450]. Based on these findings, Dr. Gutti opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently; stand/walk less than two hours in an eight-hour workday; and sit about two hours in an eight-hour workday [TR 451]. Dr. Gutti further opined that Plaintiff could climb, balance, stoop, crouch and kneel occasionally, but never crawl; that Plaintiff should not push or pull over 10 pounds; and that Plaintiff should not operate heavy machinery or be exposed to vibration [TR 452].

It is well established that the findings and opinions of *treating* physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 530-31; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference,

7

and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

However, as a one-time examiner, Dr. Gutti's opinion is not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 416.902; 416.927(c)(2); *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Indeed, when weighing the various opinions and medical evidence, the ALJ must consider various factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the ALJ considered Dr. Gutti's opinion, but gave it little weight [TR 18]. The ALJ gave several reasons for the weight

assigned to Dr. Gutti's opinion, including that Dr. Gutti is not Plaintiff's treating physician and that Dr. Gutti's opinion was based upon a one-time evaluation, rather than a longitudinal treatment history. The ALJ further found that the limitations in Dr. Gutti's opinion are excessive and inconsistent with the objective medical evidence of record. For example, the ALJ noted that the body of evidence demonstrates that Plaintiff experienced tangible benefits and relief from a laminectomy [TR 17]. In addition, as pointed out by Defendant, aside from noting decreased sensation on the left leg and foot and that Plaintiff walked with a limp, Dr. Gutti's physical examination findings were generally benign [TR 449-50]. In fact, Dr. Gutti noted that Plaintiff's muscle tone is normal in the upper and lower extremities [TR 449].

With respect to Plaintiff's limp, the ALJ also considered that, although Plaintiff reported debilitating pain and difficulty walking or standing, a notation in a medical record suggested that Plaintiff's symptoms may have been exaggerated [TR 17]. Specifically, a notation in a medical record stated that, although Plaintiff was noted to have an antalgic gait inside the doctor's office, the office staff observed Plaintiff "walking well and fast across [the] parking lot" [TR 17, 386-388]. The ALJ also noted that Plaintiff did not participate in physical therapy after his back surgery and had a history of non-compliance [TR 17]. Plaintiff further reported that he was "doing fairly well" and

getting good relief with Percocet and Valium in April 2011 [TR 17].
Also, the ALJ noted that, despite Plaintiff's reports of pain,
Plaintiff testified that he is able to independently provide for
his personal care and basic needs, do household chores, and drive
short distances [TR 17].   Because Dr. Gutti's opinions are
inconsistent with other evidence of record, the ALJ did not err by
declining to give these opinions controlling weight.   *Houston v.
Sec. of Health and Human Services*, 736 F.2d 365, 367 (6th Cir.
1984).   *See also*, 20 C.F.R. §§ 416.927(b), (c)(2).   For these
reasons, substantial evidence supports the ALJ's decision to
discount the opinions of Dr. Gutti.

   To the extent that Plaintiff argues that, having given little
weight to Dr. Gutti's opinion, the ALJ could not give considerable
weight to Dr. Hernandez, a non-examining state agency consultant,
this argument is without merit.   Dr. Hernandez's opinion, as a
state agency consultant and expert in Social Security disability,
may be entitled to great weight if his opinion is supported by the
evidence in the record. 20 C.F.R. § 404.1527(e)(2); SSR96-6p, 61
Fed. Reg. 34,366-01 (July 2, 1996). Here, Dr. Hernandez performed
a thorough review of the evidence of record and based his opinion
on this evidence [TR 68-87].   Dr. Hernandez opined that Plaintiff
did have a medically determinable impairment - disorders of back,
discogenic and degenerative - but that Plaintiff could occasionally
lift and/or carry 20 pounds; frequently lift and/or carry 10

pounds; stand and/or walk and sit for about 6 hours in an 8-hour workday; pushing and pulling was limited in lower extremities; could occasionally climb ramps, stairs, stoop, kneel, crouch or crawl; had no balancing limitations; and could never climbs ladders/ropes or scaffolds [TR 72-75, 80-85]. Dr. Hernandez further opined that Plaintiff's only environmental limitations were that he should avoid all exposure to vibration and hazards [TR 74, 84]. For each opinion on Plaintiff's limitations, Dr. Hernandez identified specific medical evidence in the record supporting his findings [TR 72-75, 80-85]. Thus, the ALJ did not err in giving considerable weight to Dr. Hernandez's opinion, as Dr. Hernandez's opinion was supported by the evidence in the case record.

Plaintiff also argues that Dr. Hernandez's opinion was not based on substantial medical evidence because he did not have the opportunity to review later medical records, including two unidentified lumbar spine operative reports and Dr. Gutti's report. However, "[t]here is no categorical requirement that a non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm. of Social Sec. Admin.*, 405 Fed.Appx. 997, 1002 (6th Cir. Jan. 4, 2011)(unpublished)(quoting SSR 96-6p, 1996 WL 374180, at *2 (1996)). Here, the ALJ considered all of the available medical records, including the subsequent records of Plaintiff's spinal

surgeries and Dr. Gutti's opinion.  Greater weight may be given to
an opinion that is not based on a review of the complete case
record where the ALJ's opinion indicates consideration of the
additional evidence.  *Blakley v. Commissioner of Social Security*,
581 F.3d 399, 409 (6th Cir. 2009).  *See also Brooks v. Social Sec.
Admin.*, 430 Fed.Appx. 468, 482 (6th Cir. July 15,
2011)(unpublished).

Specifically, the ALJ considered the medical records of
Plainitff's March 2011 "minimally invasive spinal fusion of the L3-
L4, with use of a spinous process clip" and noted that Plaintiff
reported that the surgery was "minimally and temporarily
successful" [TR 17].  The ALJ also noted that, as Plaintiff was
again reporting radiating lower back pain in June of 2011, an MRI
of Plaintiff's lumbar spine showed DDD, moderate to severe spinal
stenosis, and bunching nerve roots at the L3 level, and, further,
that a subsequent MRI discovered that the hardware/clips used in
the previous surgery had cracked, causing compression posteriorly
at the L3 and L4 [*Id.*].  Thus, as noted by the ALJ, Plaintiff
proceeded with a laminectomy and removal of the previous hardware
[*Id.*].  After considering the medical records from these
procedures, the ALJ concluded that "the body of evidence
demonstrates that [Plaintiff] experienced tangible benefits and
relief from the laminectomy and has displayed abilities [*sic*] are
greater than what he reports and alleges herein" [*Id.*].  The ALJ

noted that, although Plaintiff reported debilitating pain and alleged difficulty walking and standing and was noted to have an antalgic gait inside the doctor's office, he was observed "walking well and fast across [the] parking lot" of his doctor's office [*Id.*]. The ALJ also noted that Plaintiff did not participate in physical therapy after his back surgery and, in April 2011, Plaintiff reported that he was doing "fairly well" and was getting good relief with Percocet and Valium [*Id.*]. In addition, the ALJ noted that Plaintiff had a history of non-compliance, is able to independently provide for his personal care and basic needs, and that Plaintiff denied taking opitates/benzodiazepine/marijuana, even though a urine screen was positive for all three substances [TR 17]. Finally, the ALJ noted that "clinical and treatment notes reveal that the claimant reported the laminectomy was helpful, concerning pain and symptom reduction" [*Id.*].

Thus, the ALJ considered both the subsequent records of Plaintiff's surgeries, as well as Dr. Gutti's opinion. Accordingly, the ALJ did not err in affording considerable weight to Dr. Hernandez's opinion, which was supported by substantial medical evidence in the record. While Plaintiff disagrees with the ALJ's conclusions, the ALJ properly weighed the medical evidence in accordance with the appropriate legal standards.

    B.   <u>Even if the ALJ Misinterpreted Dr. Gutti's Report, the ALJ's Finding of No Disability is Still Supported by Substantial Evidence</u>

Plaintiff further argues that the ALJ's decision is not based upon substantial medical evidence in light of the ALJ's allegedly mistaken reference to a report that Plaintiff was climbing a telephone pole in January 2012, an activity that the ALJ found to be inconsistent with Plaintiff's alleged disability. Specifically, in discussing the evidence of Plaintiff's disability, the ALJ states:

> In addition, recent evidence suggests that [Plaintiff] engages in activities that are inconsistent with disability. In January 2012, [Plaintiff] reportedly was climbing a telephone pole (Exhibit 20F, p. 1). The undersigned finds the act of climbing telephone poles to be inconsistent with the alleged disability.

[TR 18]. According to Plaintiff, this conclusion misinterprets a statement in the medical evaluation of Plaintiff prepared by Dr. Sujata Gutti on January 20, 2012. Dr. Gutti's report (which is the exhibit to which the ALJ refers) states as follows:

> This is a 45-year-old gentleman who is here for medical evaluation complains of low back pain for last two years. He says that he fell off of telephone pole approximately 10 feet and started the low back pain, currently rates on his low back pain as 8-9/10, constant in nature and says activity such as sitting standing, bending and driving seems to make it worse.

[TR 448]. According to Plaintiff, this notation indicates that Plaintiff was informing Dr. Gutti as to why he had back pain for the past two years, not that he had just fallen off a telephone pole.

In *Ulman v. Commissioner of Social Sec.*, 693 F.3d 709 (6th Cir. 2012), the court was faced with a similar problem. In *Ulman*,

14

the claimant's medical problems began when she fell backwards off of a ladder in 2001. *Id.* at 711. The claimant later developed other physical problems for which she sought disability benefits. When reviewing the claimant's records for purposes of assessing claimant's credibility with respect to her reports of disabling pain, the ALJ confused the date when the report was printed for the administrative record (2006) with the date of the ladder incident (2001). *Id.* This confusion led the ALJ to make the following credibility determination:

> [N]oted is the fact that although the claimant is seeking disability since June 2002 and indicating that she can do very little because of pain, records show she was actually climbing a ladder in 2006 wherein [sic] she fell about 7 to 8 feet backwards and had neck pain with pain down her left shoulder and arm all the way to the knee. *The fact that she was climbing a ladder is not consistent with being disabled prior to December 2003 and brings her credibility into question.*

*Id.* at 711-712 (emphasis in original).

The issue before the Sixth Circuit Court of Appeals was whether the ALJ's adverse credibility finding should be remanded because it was based in part upon a factual misreading of the record. *Id.* at 713. The Sixth Circuit held that harmless error analysis applies to credibility determinations in the social security disability context. *Id.* at 714. Thus, "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be

warranted even if substantial evidence would support the opposite conclusion.'" *Id.* (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). The Sixth Circuit found that, with the exception of the factual error regarding the fall from the ladder, the ALJ's decision carefully parsed all of the medical records, according them fair weight, and that those records supported a finding of no disability. *Id.* In light of the highly deferential standard of review, the Court found that the denial of benefits must be affirmed. *Id.*

Similarly, here, the ALJ's conclusion that Plaintiff is not disabled was not based solely upon the statement in Dr. Gutti's report that Plaintiff was reportedly climbing a telephone pole. Even if the ALJ's conclusion regarding the date that Plaintiff was reported to have climbed the telephone pole was incorrect, the ALJ cites to substantial evidence from other medical records, including those discussed above, to support the finding of no disability. Moreover, although Plaintiff suggests that the ALJ's alleged error regarding the telephone pole reflects that the ALJ was unaware that Plaintiff had undergone two fusion surgeries and suffered from failed back syndrome prior to January 2012, this suggestion is misplaced. In fact, as discussed above, the ALJ specifically examined and discussed the records from Plaintiff's two prior back surgeries, as well the medical records regarding Plaintiff's chronic back pain [TR 17]. Thus, even if the ALJ's interpretation

of the statement in Dr. Gutti's report regarding Plaintiff climbing a telephone pole was erroneous, this error was harmless, as the ALJ cited to other substantial, legitimate evidence to support his conclusion that Plaintiff is not disabled.

    C.    <u>The ALJ's Finding that Plaintiff did not Meet or Equal Listing 1.04C (Disorders of the Spine) is Supported by Substantial Evidence</u>

Plaintiff argues that the ALJ failed to supply supporting evidence that Plaintiff did not meet or equal Listing 1.04C (Disorders of the Spine). According to Plaintiff, all of the evidence in the record supports a finding that Plaintiff met or equaled the Listing.

Listing 1.04 states in relevant part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04C.

Listing 1.00B2b explains:

> b. What We Mean by Inability To Ambulate Effectively

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain,

or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

The ALJ found that the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under Listing 1.04 [TR 16]. The ALJ further found that there is no evidence that Plaintiff's back disorder has resulted in an inability to ambulate effectively, as defined in Listing 1.00B2b [*Id*.]. The ALJ also found that Plaintiff does not have an impairment or combination of impairments equal in severity to any listed impairment, as no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment [*Id*.].

Although Plaintiff again argues that the ALJ failed to address

that Plaintiff had two surgeries and injections, the ALJ specifically discussed Plaintiff's surgeries and referenced the medical records cited by Plaintiff [TR 17, citing Exhibit 2F, 8F, 15F, 19F]. Plaintiff also refers to notations in his medical records that his gait was noted as abnormal and that he exhibited a decreased range of motion, as well as notations of antalgic gait. Plaintiff also criticizes the ALJ's failure to discuss a Disability Report from the Field Office. In the "Observations" section of this report, the interviewer notes that, when Plaintiff arrived for his interview, "he walked with a cane and had trouble sitting down onto the chair and standing up from the chair" [TR 176]. According to Plaintiff, these notations in his medical records and the Field Office Report all support a finding that Plaintiff is unable to ambulate effectively.

However, on review by the district court, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her*, 203 F.3d at 389–390 (citation omitted). Here, as noted above, there was substantial evidence in the record indicating that, even if Plaintiff suffered from back pain, the pain was not so severe that it resulted in an inability to ambulate effectively. For example, although Plaintiff's gait was noted as abnormal during one doctor's visit, the medical record from that visit also noted that Plaintiff

was observed by the doctor's staff walking well and fast across the parking lot [TR 415-416]. In addition, as pointed out by Defendant, despite Plaintiff's gait difficulties, physicians repeatedly observed that Plaintiff had normal coordination [TR 244, 268, 381, 384, 387, 390, 409, 412, 415, 418]. Further, Plaintiff's treatment notes also indicate that, at multiple examinations, Plaintiff was able to heel walk, toe walk, and tandem walk, although with "some" difficulty [TR 263, 372, 376, 400, 404].

Defendant also correctly points out that the record does not show that Plaintiff needed a hand held device that limited his functioning of "both" upper extremities. Although Plaintiff was observed walking with a cane on a few occasions [TR 294, 305], walking with a cane would only limit functioning of one upper extremity. Indeed, Plaintiff apparently did not need a cane all the time, as evidenced by the fact that he arrived at his hearing without the cane [TR 32]. Moreover, Plaintiff did not provide medical documentation establishing his need for a hand held device to aid in balance or walking, as required by Social Security Ruling (SSR) 96-9p. This Ruling requires that, in order to make a finding that a hand-held assistive device is medically required, there must "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain;

and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7. Although some of Plaintiff's treating or examining sources occasionally observed that he used a cane, Plaintiff points to no records evidencing a discussion of its medical necessity or any indication that a cane was prescribed by a physician.

In addition, substantial evidence supports the ALJ's conclusion that, despite Plaintiff's back pain and gait difficulties, Plaintiff possesses functional abilities consistent with the capacity to perform work-related activities. As noted by the ALJ, despite Plaintiff's reports of pain, Plaintiff is able to independently provide for his personal care and basic needs, do household chores, and drive short distances [TR 17, 35, 189, 207]. Plaintiff testified that he is able to stand for up to two and a half hours at a time, sit for three hours at a time, and walk approximately the length of a football field without sitting down (although he would have to rest) [TR 17-18, 34-35].

With respect to the ALJ's failure to specifically discuss the Disability Report from the Field Office [TR 176], "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *See Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. Nov. 18, 2004)(unpublished)(quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000). *See also Boseley v. Comm'r of Soc. Sec.*

*Admin.*, 397 Fed.Appx. 195, 199 (6th Cir. Sept. 30, 2010)(unpublished)("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.")(citation omitted). Here, upon considering the evidence as a whole, the ALJ reached the conclusion that the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under Listing 1.04, nor that Plaintiff's back disorder has resulted in an inability to ambulate effectively. As these conclusions are supported by substantial evidence, they will not be disturbed by this Court.

D.    <u>The ALJ's Credibility Finding is Supported by Substantial Evidence</u>

Plaintiff also objects to the ALJ's purported reliance on the notation in one of Plaintiff's medical records to discredit Plaintiff. As discussed above, in a record dated August 4, 2011, Dr. Clark B. Bernard, MD, notes that although Plaintiff reports debilitating pain and alleges difficulty walking and standing and was noted to have an abnormal gait inside the doctor's office, he was observed "walking well and fast across [the] parking lot according to my staff" and that he "will need urine drug screen next visit [TR 386-389]. The ALJ relied on this statement, as well as other evidence, in making the finding that "[o]bjective testing

and imaging reveal the origin of [Plaintiff's] symptoms and support a basis for reasonable limitations; however, the body of evidence demonstrates that the claimant experienced tangible benefits and relief from the laminectomy and has displayed abilities are greater than what he reports and alleges herein" [TR 17].

Plaintiff argues that the this statement in the record is only hearsay and refers only to a "pt." walking across the parking lot and does not identify Plaintiff by name. Plaintiff also argues that the ALJ failed to consider that this incident was not discussed when Plaintiff returned to Dr. Bernard on September 9, 2011 and that a drug screen is not found in the record. According to Plaintiff, the ALJ "chose to hang his hat on one statement instead of all the substantial evidence and sadly failed to consider that a month and a half later, [Plaintiff] underwent another surgery by the same doctor" [DE #10-1].

A plaintiff's subjective statements of pain or other symptoms, taken alone, cannot support a finding of disability. 20 C.F.R. § 404.1529 (a)-(e). *See also Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024, 1030 (6th Cir. 1990). The Sixth Circuit Court of Appeals has developed a two-prong test to evaluate a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a

23

> severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531(citations omitted).

In addition, "in evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Id.* (citing *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). Although an ALJ's assessment of a claimant's credibility must be supported by substantial evidence, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citations omitted).

Here, the ALJ found that, although objective testing and imaging revealed the origin or Plaintiff's symptoms and could support a basis for reasonable limitations, the body of evidence demonstrates that Plaintiff experienced tangible benefits and relief from the laminectomy and has displayed abilities greater than what he reports and alleges [TR 17]. In addition to the notation in the August 4, 2011 medical record reporting that Plaintiff "walked well" across the parking lot of the doctor's office, the ALJ also pointed to evidence that Plaintiff did not participate in physical therapy after his black surgery; on April 19, 2011, Plaintiff reported that he was "doing fairly well" and getting good relief with Percocet and Valium; Plaintiff denied

taking opiates/benzodiazepine/marijuana, even though a urine screen was positive for all three substances; Plaintiff has a history of non-compliance; and despite Plaintiff's reports of pain, he is able to independently provide for his personal care and basic needs, do household chores, and drive short distances [TR 17].

In essence, Plaintiff disagrees with the ALJ's evaluation of the notation in the August 4, 2011 record. However, it is within the province of the ALJ to resolve conflicts in the evidence and decide questions of credibility. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Moreover, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Although Plaintiff may disagree with the conclusions reached by the ALJ, the ALJ clearly explained that his conclusions regarding Plaintiff's credibility were based on contradictions between Plaintiff's allegations regarding his abilities and evidence in the record, including medical records and testimony. Contrary to Plaintiff's argument, the ALJ did not just "hang his hat" on one record, but rather based his assessment on his review of multiple medical records, as well as testimony from the hearing. Moreover, although Plaintiff argues that the ALJ failed to consider that Plaintiff underwent another surgery by Dr. Bernard a month and a half after the August 4, 2011 office visit, the ALJ discussed Plaintiff's subsequent

September 14, 2011 surgery, specifically referring to Dr. Bernard's records from this surgery [TR 17, 420-421]. For all of these reasons, Plaintiff's current complaints regarding the ALJ's evaluation of the August 4, 2011 medical record, as well as the ALJ's evaluation of Plaintiff's credibility, are without merit. Rather, the ALJ's credibility finding is supported by substantial evidence, and, accordingly, will not be disturbed by this Court.

**V.    CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)    Plaintiff's motion for summary judgment [DE #10] is **DENIED**;

(2)    the Commissioner's motion for summary judgment [DE #11] is **GRANTED;**

(3)    the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4)    a judgment consistent with this Opinion & Order will be entered contemporaneously.

This the 18th day of July, 2014.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge